**Nhia Y. YANG, Plaintiff–Appellant,**

v.

**YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF MADISON, Defendant–Appellee.**

No. 03–2970.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 2004.

Decided March 9, 2004.

David E. Lasker, Lasker & Edwards, Madison, WI, for Plaintiff–Appellant.

William W. Ehrke, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Defendant–Appellee.

Before BAUER, MANION, and EVANS, Circuit Judges.

## ORDER

After working 9 years for the Young Women's Christian Association in Madison, Wisconsin (YWCA), Nhia Y. Yang was terminated for what the YWCA said was entering residents' apartments after being told not to and for sleeping on the job. Yang filed a discrimination charge with the EEOC alleging that he was terminated not for those reasons, but because of his race, color, and national origin. After receiving a right to sue letter from the EEOC, Yang filed suit in federal district court with the same allegations. The district court granted summary judgment for the YWCA. Yang appeals that decision.

We review grants of summary judgment *de novo*. We view the record and all reasonable inferences therein in favor of Yang, the nonmovant. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343 (7th Cir.1997). If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c); *see also Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673 (7th Cir.2001) (discussing appropriateness of summary judgment in employment discrimination cases).

Yang, a Hmong[1] male, was hired by the YWCA in 1993 as a building maintenance worker. The YWCA is a nonprofit organization that, among other things, provides permanent housing for low-income, single women, with one child 4 years old or younger. Nancy Wrenn–Bauch was the YWCA's coordinator, Eileen Mershart was its executive director, and Mark Peterson was a building engineer. Peterson no longer works for the YWCA.

---

[1] Most Hmong living in the United States today come from Laos, in Southeast Asia. Hmongs have also emigrated from Vietnam, Thailand, and Cambodia. According to the 2000 census, 186,310 Hmong live in the United States, and many of them, 36,809 (almost 20 percent), live in Wisconsin.

Yang was told, prior to 2002, not to enter a resident's apartment without permission. In January 2002, resident Onyx O'Brien complained that Yang entered her apartment after she had asked him to wait until she could get dressed.

On January 7, 2002, Wrenn–Bauch went to an apartment Yang was painting, and it appeared to her that Yang was either sleeping or resting on a couch. She reported this to Peterson and Mershart. Mershart had also previously found Yang in an apartment, and she thought he was either resting or sleeping. On January 8, 2002, Mershart sent Peterson a memo stating that Yang's sleeping on the job would no longer be tolerated. Yang was suspended by Peterson for one day as a result of the January 7, 2002, incident.

On April 19, 2002, Yang went to the apartment of Jan Tessier, who was sleeping. He knocked on the door, she awoke and asked him not to come in but, according to her, he opened the door. Tessier complained to Mershart. She said she was going to contact the Madison police department, the Madison Tenant Resource Center, and a lawyer because her privacy rights were violated. That afternoon Tessier called the Madison police department and spoke with a police officer.

After speaking with Tessier, Mershart talked to Yang. Mershart was angry: she yelled at him, grabbed his shirt collar, and pulled him into her office.

Mershart decided to terminate Yang based on Tessier's complaint coupled with the prior complaint by O'Brien and Yang's previous suspension for sleeping or resting on the job. Peterson informed Yang on April 19, 2002, that he was terminated by Mershart. By letter dated April 23, 2002, Mershart formally advised Yang that he was terminated. Except for Yang, the YWCA has not received complaints from tenants about employees entering their rooms after being asked not to.

One way of proving discrimination is by direct evidence. The district court found that Yang presented no such evidence, and we agree. His only hope is to rely on the indirect, burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To succeed using this method of proof, Yang must first establish a prima facie case of discrimination by a preponderance of the evidence. *Plair v. E.J. Brach & Sons. Inc.*, 105 F.3d 343, 347 (7th Cir.1997). To establish a prima facie case of discrimination, he must show that he was a member of a protected class, he was meeting his employer's legitimate performance expectations, he suffered an adverse employment action, and similarly situated employees not in the protected class were treated more favorably. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545–46 (7th Cir.2002).

■ There is no dispute that Yang is a member of a protected class and that he was terminated. With respect to the second prong, meeting the YWCA's legitimate performance expectations, Yang has submitted an affidavit by Peterson that Yang was doing his job well. However, Peterson was not the decisionmaker who terminated Yang. According to Mershart, who was the decisionmaker, Yang was not performing his job according to the YWCA's legitimate expectations because he entered two apartments after being told not to and he was discovered on two occasions sleeping or resting on the job. Whether or not he was actually sleeping or resting is beside the point—what's important is Mershart's *belief* that he was. And there's no evidence here to suggest that Mershart's belief was not honestly held.

■ Yang also cannot show that employees not in a protected class were treat-

ed more favorably after similar infractions were noted. *Flores v. Preferred Technical,* 182 F.3d 512 (7th Cir.1999). To establish the similarly situated prong requires a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.... [A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000). Yang has submitted no evidence that complaints were received by the YWCA about other workers entering residents' apartments when asked not to do so, or that other workers were thought to be sleeping or resting in tenants' apartments. He has submitted no evidence that an employee who entered a resident's apartment when asked not to do so was not terminated. And so Yang has failed to demonstrate that any similarly situated employees were treated more favorably. So, as the district court correctly concluded, Yang has not demonstrated a prima facie case of discrimination.

■ If Yang had demonstrated a prima facie case, the burden would then shift to the YWCA to articulate a legitimate, non-discriminatory reason for the termination. Yang would then have to demonstrate that the reason given for his termination was pretextual. *Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir.1999). That would be an impossible task. Yang has submitted no evidence from which one could infer that the reasons given by the YWCA for firing him were pretextual. He contends that he was not sleeping or resting, as Wrenn–Bauch and Mershart believed. He also claims that, although he

unlocked and opened the doors after O'Brien and Tessier asked him not to, he did not physically enter their rooms. Our concern, however, is not whether the YWCA has made a reasonable decision, but an honest one. *Flores v. Preferred Technical Group,* 182 F.3d 512, 516 (7th Cir.1999). To prove pretext, Yang needs to prove that Mershart did not honestly believe the reasons she gave for firing him. *Wolf v. Buss (America), Inc.,* 77 F.3d 914 (7th Cir.1996).

Yang draws his evidence of pretext from his and Peterson's affidavits. In his affidavit, he states that Mershart was "trying to make a case against me" and she "treated me and other Asian employees differently than she treated the non-Asian employees." Peterson (who may have had an axe to grind against the YWCA himself and didn't show up for a deposition where he would have faced cross-examination) states that "to my observation, [Wrenn–Bauch and Mershart] subjected Mr. Yang to greater scrutiny than any non-Asian employee" and "Mershart appeared to be uncomfortable around our Hmong employees, as compared to the way she was around non-Asian employees.... She appeared to be overly concerned about whether or not the Hmong employees understood things they were told or asked to do." However, no names or races of these employees are given, nor are any details of the purported incidents. Self-serving affidavits without factual support in the record cannot defeat summary judgment. *Slowiak v. Land O'Lakes,* 987 F.2d 1293, 1295 (7th Cir.1993). Based on the complaints of two tenants, her observation of Yang resting (or sleeping) in an apartment, and Wrenn–Bauch's report of seeing him resting (or sleeping) in an apartment, Mershart concluded Yang should be terminated. There is no evidence that she did not honestly believe Yang should be terminated for these reasons. We do not sit as

a super personnel board reviewing business decisions. *Guerrero v. Ashcroft,* 253 F.3d 309, 314 (7th Cir.2001). Yang's beliefs, without supporting evidence, are not proof of pretext.

The district court's grant of summary judgment for defendant is AFFIRMED.